UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOFTWARE FOR MOVING, INC., <br> A New York Corporation <br><br> Plaintiff, <br><br> v. <br><br> LA ROSA DEL MONTE EXPRESS, INC., <br> a New York corporation, and LA ROSA <br> DEL MONTE EXPRESS (CHICAGO) <br> LLC, an Illinois Limited Liability <br> Company <br><br> Defendants. | Case No. 07 C 1839 <br><br> Judge Joan B. Gottschall <br><br> Magistrate Judge Jeffrey Cole |

## MEMORANDUM OPINION AND ORDER

Defendants La Rosa Del Monte Express, Inc. ("La Rosa New York") and La Rosa Del Monte Express (Chicago) LLC ("La Rosa Chicago," and collectively "La Rosa"), have filed an omnibus motion with this court to dismiss plaintiff Software for Moving, Inc.'s ("SFM") first amended complaint or, in the alternative, to transfer the action to the Southern District of New York. The motion further opposes SFM's motion to stay arbitration and opposes SFM's motion to strike the declaration of John T. A. Rosenthal. The motion also includes La Rosa's cross-motion to stay this action and/or to compel arbitration. For the reasons set forth below, La Rosa's motion to dismiss is denied, SFM's motion to stay arbitration is granted, and La Rosa's cross-motion to stay this action and/or to compel arbitration is denied. SFM's motion to strike the declaration of John T. A. Rosenthal is denied as moot. Finally, La Rosa's motion to transfer the action to the Southern District of New York is granted.

1

**I. BACKGROUND**

At the heart of this case is an alleged written contract between SFM and La Rosa that is either authentic or fraudulent. SFM is a software company that, as its name implies, develops and licenses software for moving companies. SFM's predecessor was a company called Safeguard Computer Services, Inc. ("Safeguard"). La Rosa is a moving company, incorporated in New York, operating at 11 locations within the United States and internationally. La Rosa Chicago is a subsidiary or sister corporation established in Chicago by La Rosa.

In 1999, La Rosa entered into a contract with Safeguard for the licensing of a Windows™-based program, Moving Manager for Windows ("the 1999 Agreement"). Prior to 1999, La Rosa allegedly also licensed a DOS-based version of Moving Manager from Safeguard. In December 2004, La Rosa and SFM allegedly entered into an agreement by which La Rosa would license a new, Web-based version of Moving Manager from SFM, incorporating several modifications suited to La Rosa's needs. According to SFM, although it spent 20 months developing the Web-based software for La Rosa, no written agreement memorializing the contract was ever presented to, or signed by, SFM, with the exceptions described below. SFM alleges that, based solely on an oral agreement, the contract price for developing the Web-based program was $295,000, payable upon completion of the working program.

La Rosa allegedly went "live" with the Web-based program in August 2006, at which time it requested that SFM sign a 9/11 agreement[1] as well as a chart listing La Rosa's maintenance fee payment obligations over the ensuing seven years. In 2006, La

---
[1] A "9/11" agreement is one in which a software licensor places the source code of the licensed software in escrow, to be made available to the licensee should some mishap befall the licensor.

2

Rosa requested modification of the Web-based program; again, this was allegedly based on an oral agreement that La Rosa would pay SFM an additional $60,000 if the modifications were acceptable.

La Rosa hotly disputes SFM's contention that there was no written agreement between the two parties for the Web-based program. La Rosa alleges that there was indeed a written development and license agreement between SFM and La Rosa (the "2005 Agreement") for the Web-based program that was signed by SFM's president, Shlomo Kogos ("Kogos") on March 3, 2005. SFM has dismissed the agreement as a fraud and Kogos' alleged signature on the document as a forgery.

According to SFM, La Rosa stopped paying the maintenance fees required under the 1999 Agreement in August, 2006. When La Rosa ignored SFM's demands that it continue to pay the maintenance fees, SFM filed suit in this court, alleging that La Rosa had infringed SFM's copyright by continuing to use the software covered by the 1999 Agreement and seeking damages under 17 U.S.C. §§ 504 and 505 (count I). SFM also claims that La Rosa breached the 1999 Agreement by failing to pay the licensing fees specified in the 1999 Agreement (count II). SFM further alleges that La Rosa breached the oral contract it made with SFM concerning the Web-based program when it failed to pay $52,500 of the agreed-upon price of $295,000 for the development and licensing of the Web-based program and by failing to pay the maintenance fees according to the schedule signed in 2006 (count III). Finally, SFM claims that La Rosa also breached the subsequent oral contract by failing to pay $60,000 for the modifications to the program allegedly requested by La Rosa.

## II. ANALYSIS

A. La Rosa's Motion to Dismiss for Lack of Subject Matter Jurisdiction

La Rosa has moved to dismiss SFM's complaint under Federal Rule of Civil Procedure 12(b)(1), claiming that this court lacks subject matter jurisdiction to hear the case. FED R. CIV. P. 12(b)(1). When deciding a motion to dismiss under Rule 12(b)(1), the court construes the complaint liberally and is not bound to accept as true allegations of jurisdiction where a party properly raises factual questions of subject matter jurisdiction. *Bab Systems, Inc. v. Pilatus Inv. Group, Inc.*, No. 05 C 3038, 2005 WL 2850119, at *2 (N.D. Ill. October 27, 2005). Furthermore, the court may look beyond the jurisdictional allegations to examine any evidence submitted to determine if subject matter jurisdiction in fact exists. *Id.*

Specifically, La Rosa claims that it was Safeguard, not SFM, which registered the copyright of the software that was the subject of the 1999 Agreement. Kogos, the president of both Safeguard and SFM, has alleged that SFM is the successor in interest to Safeguard, and that Safeguard's ownership of the allegedly infringed copyright was transferred to SFM. Decl. of Shlomo Kogos ¶ 8. La Rosa claims that Safeguard did not properly assign its copyright to SFM, because SFM allegedly cannot produce a writing memorializing the transfer of the copyright from Safeguard to SFM as required by 17 U.S.C. § 204(a). Therefore, contends La Rosa, since SFM cannot, absent a written transfer agreement, properly allege ownership of the copyright, it must necessarily lack standing to bring a case of copyright infringement. Finally, according to La Rosa, since SFM cannot meet its burden of demonstrating that it has standing in this case, its

complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). *Althin CD Medical, Inc. v. West Suburban Kidney Center*, 874 F. Supp. 837, 843 (N.D. Ill. 1994).

La Rosa invokes § 204(a) in claiming that since SFM has not produced (and presumably cannot produce) a copy of a written instrument of conveyance, or note or memorandum of the transfer, of the copyright from Safeguard to SFM, then SFM cannot be recognized as owner of the copyright with standing to bring suit. Section 204(a) of the Copyright Act states that: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C § 204(a). The "operation of law" clause of § 204(a) has generally been limited to well-defined circumstances, including transfers of ownership pursuant to proceedings in bankruptcy and mortgage foreclosures; transfer of ownership rights from employee to employer in a "for hire" situation; or by transfer of assets from a dissolving corporation to its shareholders pursuant to the laws of the state of incorporation. *Brooks v. Bates*, 781 F. Supp. 202, 205-06 (S.D.N.Y. 1991). None of these limited circumstances by which copyright ownership may be transferred via operation of law is applicable to the instant case.

Nevertheless, La Rosa's motion to dismiss based on the above argument is fatally flawed. The Seventh Circuit has held explicitly that alleged third-party infringers, like La Rosa, may not invoke § 204(a) to avoid suit for copyright infringement. *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592-93 (7th Cir. 2003). According to the court, § 204 is in the nature of the Statute of Frauds and is specifically designed to resolve disputes

5

between copyright owners and transferees. *Billy-Bob Teeth*, 329 F.3d at 592. Where there is no dispute between the copyright owner and the transferee over the status of the copyright, "it would be unusual and unwarranted to allow a third party infringer to invoke [§] 204(a) to avoid suit for copyright infringement." *Id.* at 592-93 (quoting *Imperial Residential Design, Inc. v. The Palms Development Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)).

It is undisputed that there is no quarrel whatever between Safeguard and SFM over the assignment of the software copyright from the former to the latter. La Rosa, as an alleged third party infringer, simply lacks standing to invoke § 204(a) as the basis for its motion to dismiss under Rule 12(b)(1). *Billy-Bob Teeth*, 329 F.3d at 592. La Rosa's motion to dismiss is consequently denied.

B. <u>SFM's Motion to Stay Arbitration and La Rosa's cross-motion to stay this proceeding and/or to compel SFM to arbitrate.</u>

In February 2007, La Rosa initiated arbitration proceedings with the American Arbitration Association under the contested 2005 Agreement. SFM has resisted arbitration, claiming that there was no valid written agreement to arbitrate with La Rosa (and indeed that the 2005 Agreement is invalid) and has moved for a stay of arbitration proceedings.

> Section 4 of the Federal Arbitration Act (9 U.S.C. § 4) states in part:
>
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement …. If the making of the arbitration agreement or the

> failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C § 4. La Rosa claims that the 2005 agreement, and the arbitration agreement contained therein, is valid and binding and contends that this court should therefore deny SFM's motion to stay arbitration and compel SFM to proceed with the arbitration initiated by La Rosa. SFM claims that it had never seen the 2005 Agreement (with its arbitration agreement) prior to La Rosa's February 2007 demand for arbitration and that Kogos' alleged signature on the 2005 Agreement is a forgery. SFM denies having any knowledge of, or intent to enter into, any arbitration agreement with La Rosa.

There is, therefore, a serious disagreement between the parties with respect to a significant issue of material fact, *viz.*, the authenticity of the 2005 Agreement and its alleged agreement to arbitrate. Since there is a dispute concerning the making of the agreement, 9 U.S.C. § 4 is squarely in play, directing this court to proceed summarily to trial.

La Rosa cites *God's Battalion of Prayer Pentacostal Church, Inc. v. Miele Associates LLP* in support of its opposition to SFM's movement to stay arbitration. 85 N.E.2d 1265 (S.D.N.Y. 2006). However *God's Battalion* is distinguishable from the instant case. In *God's Battalion*, the party moving to stay arbitration was in possession of an unsigned copy of the contract containing the arbitration agreement prior to the arising of the dispute. 85 N.E.2d at 1266. The court held that retention of the unsigned copy, as well as its proceeding with the terms of the contract prior to the arisal of the dispute, evinced both parties' willingness to be bound by the terms of the contract, despite the fact that one party had failed to sign it. *Id.* at 1267.

La Rosa correctly argues that an arbitration clause in an unsigned agreement, is enforceable if the other party's conduct evinced an intent to be bound by the agreement. *See Rudolph & Beer, LLP v. Roberts*, 260 A.D.2d 274, 276 (N.Y. Sup. Ct. 1999); *Maxit Designs, Inc. v. Coville, Inc.*, No. CIV. S-05-1040 WBS DAD, 2006 WL 2734366, at *4 (E.D. Cal. 2006); *Liberty Management & Const. Ltd. v. Fifth Ave. & Sixty-Sixth Street*, 208 A.D.2d 73, 73 (N.Y. Sup. Ct. 1995). But in each of these cases cited by La Rosa, a written agreement was present and in the possession of both parties prior to the dispute, even though unsigned by one party.

In the instant case, however, SFM alleges that it did not have possession of the 2005 Agreement until La Rosa produced it in demanding arbitration and that, furthermore, the contract is fraudulent. SFM alleges that it never saw or signed the 2005 Agreement at the time it developed and delivered the Web-based Moving Manager software to La Rosa, and that the contract between SFM and La Rosa was strictly oral, with no mention of an arbitration agreement. And even had there been an oral agreement to arbitrate between SFM and La Rosa, such an agreement would have been unenforceable, because all such agreements are required to be in writing. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). SFM claims that it cannot be bound to arbitration because it never agreed to be bound, or acted as if it agreed to be bound, to an arbitration agreement of which it claims it was entirely ignorant.

SFM disputes that there was ever a valid arbitration agreement with La Rosa, and disputes even the validity of the 2005 Agreement which contains the agreement to arbitrate. Since the existence of an agreement to arbitrate is in issue, 9 U.S.C § 4 commands that the court to proceed summarily to trial to determine whether the 2005

Agreement, and its constituent arbitration agreement, is valid. *Prima Paint Corp.*, 388 U.S. at 403-04; *see also Great American Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1288 (7th Cir. 1980). SFM's motion to stay arbitration pending trial is therefore granted. For the same reasons, La Rosa's cross-motion to stay this proceeding and/or to compel SFM to arbitrate is denied.

C. SFM's Motion to Strike the Declaration of John T. A. Rosenthal

The declaration of John T. A. Rosenthal ("Rosenthal") has been adduced by La Rosa in support of its motion to dismiss and in opposition to SFM's motion to stay arbitration. The purpose of the declaration is purportedly to demonstrate that SFM and La Rosa had entered into arbitration, a contention that SFM contests. SFM particularly objects to Rosenthal's allegations concerning the authenticity of the 2005 Agreement and SFM's alleged agreement to arbitrate. Rosenthal Decl. ¶¶ 3, 10. As stated above, the question of the authenticity of the 2005 Agreement and its agreement to arbitrate are to be decided by the court at trial subsequent to the directive of 9 U.S.C. § 4. Since this court has denied La Rosa's motion to dismiss and has granted SFM's motion to stay arbitration, SFM's motion to strike Rosenthal's declaration is denied as moot.

D. La Rosa's Motion to Transfer the Action to the Southern District of New York

Its motion to dismiss having been denied, La Rosa has moved in the alternative to transfer this action to the Southern District of New York. A transfer is appropriate if venue is proper in both districts, if transfer promotes the convenience of the parties and witnesses, and if transfer is in the interests of justice. *Solaia Technology, Inc. v. Rockwell Automation, Inc.*, No. 03 C 566, 2003 WL 22057092, at *2 (N.D. Ill. Sept. 2,

2003). La Rosa has not moved to dismiss for improper venue so the court assumes without deciding that venue is proper in both districts.

The court evaluates the convenience of the parties and witnesses by considering: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties. *See, e.g.*, *Washington Nat. Life Ins. Co. v. Calcasieu Parish School Bd.*, No. 05 C 2551, 2006 WL 1215413, at *8 (N.D. Ill. May 2, 2006).

### *1. Plaintiff's Chosen Forum*

SFM's choice of forum is Illinois, which is entitled to some weight. *See Solaia Technology, Inc.*, 2003 WL 22057092, at *2 ("One factor relevant to the convenience analysis is the plaintiff's choice of forum, which is entitled to substantial deference, particularly when the chosen forum is the plaintiff's home state."). This factor is not necessarily conclusive. *See, e.g., Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995) (Although plaintiff's choice of forum has been given substantial weight in some cases, it is not the only factor a court must consider in determining whether to transfer venue). Illinois is not SFM's home state (SFM is a New York corporation) and that diminishes somewhat the weight that this court accords to its choice of forum. However, although this factor is in SFM's favor, the other factors in this case tip the balance in favor of La Rosa's motion to transfer.

### *2. Situs of Material Events*

The principal material event in this action is the alleged 2005 Agreement governing the relationship between the parties. The alleged 2005 Agreement was (or was not) the result of dealings between SFM and La Rosa New York which took place in New

York. The disagreement over the authenticity of the 2005 Agreement is the font from which the other alleged wrongs (breach of contract and copyright infringement) flow in this case. It is true that La Rosa Chicago, La Rosa New York's sister or subsidiary organization, is also alleged to be infringing SFM's copyright, but the fact remains that the contractual relationship at the heart of this case was conceived in New York between SFM and La Rosa New York. This factor thus weighs in favor of transferring the action.

*3. Access to Sources of Proof and Convenience of Witnesses*

Both of the principal parties (SFM and La Rosa New York) to the alleged 2005 Agreement are New York corporations. Moreover, the adoption of the 2005 Agreement, or lack thereof, apparently took place in New York between actors for both parties who reside in New York. Indeed, the only connection with Illinois is La Rosa New York's sister or subsidiary company, La Rosa Chicago, which is allegedly infringing SFM's copyright at its Chicago office. However, the copyright is also allegedly being infringed at La Rosa's other locations, and nothing has been alleged to suggest that La Rosa Chicago was a party to the 2005 Agreement which is at the heart of this controversy. Because the 2005 Agreement was (or was not) drafted, signed, and adopted in New York, between actors who are citizens of New York, it can be presumed that the factors of access to sources of proof, including discovery and the convenience of the witnesses likely to be called, including present and past actors for the New York corporations involved, are better served by transferring this action to the Southern District of New York.

*4. Transfer is in the Interests of Justice*

When evaluating the interest of justice (often referred to as the "public interest" factors), the court focuses on the efficient administration of the court system. *Washington Nat. Life Ins. Co. v. Calcasieu Parish School Bd.*, 2006 WL 1215413, at *8. Relevant considerations here include: (1) the court's familiarity with the applicable law; (2) the speed at which the case will proceed to trial, and; (3) the desirability of resolving controversies in their locale. *Id*. The movant has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-220 (7th Cir. 1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id*.

Once again, these factors weigh in favor of granting La Rosa's motion to transfer. With the exception of count I (copyright infringement), all of the other counts comprise actions at common law. Were the court to hear this case, it would likely apply New York state law to the common law counts II through IV. This argues in favor of transfer to the Southern District of New York, which is likely more familiar with New York common law than is this court.

Generally, for federal claims based on pendant state claims, federal district courts follow the choice of law rules of the state in which the district sits. *Gramercy Mills, Inc. v. Wolens,* 63 F.3d 569, 572 (7th Cir. 1995). Illinois has adopted the tests from the Restatement (Second) of Conflicts to serve as its choice of law rules in contract cases. RESTATEMENT (SECOND) OF CONFLICTS § 188 (1971); *Asser v. McIntyre,* 661 N.E.2d 1138, 1141 (Ill. 1996). Illinois applies the Restatement's "most significant relationship"

test for choosing the appropriate law. *Gramercy Mills*, 63 F.3d at 572. In determining which state's law should apply, the court considers: "(a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, place of incorporation, and place of business of the parties." *Id.*; RESTATEMENT (SECOND) OF CONFLICTS § 188 (1971). The Restatement further indicates that the factors "are to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT (SECOND) OF CONFLICTS § 188.

Applying these factors, the court observes that the contract was allegedly negotiated and signed in New York by entities that are incorporated in New York. Although La Rosa Chicago is an Illinois limited liability company, it was La Rosa New York that negotiated the disputed contract with SFM. The location of the subject matter of the contract (the development and licensing of the Web-based Moving Manager software) was primarily in New York (where SFM is located), although all of La Rosa's subsidiaries presumably shared the license. Likewise, the place of performance (with respect to development of the software at least) took place in New York. Thus, the alleged 2005 Agreement was negotiated and signed in New York by parties incorporated in New York, with performance (with respect to development and delivery of the software) and subject matter located in New York.[2] Given these facts, it is evident that New York has a more significant relationship with the occurrence and parties than Illinois, and thus the Illinois choice of law rule favors application of New York state law.

---

[2] The court notes that SFM has also filed an action in the New York State Supreme Court against La Rosa seeking a stay of the arbitration proceedings. *See Software for Moving, Inc. v. Del Monte Express, Inc.*, Case no. 603001-07 (N.Y. Sup. Ct. 2007).

13

Since New York law likely applies to the common law counts of SFM's complaint, the "familiarity factor" weighs in favor of transfer.

Both the Southern District of New York and the Northern District of Illinois contain large urban metropolitan areas with consequently heavy dockets for their district courts. It is therefore unlikely that a change of venue will significantly impede or accelerate the course of this action. Thus the second public interest factor is probably evenly balanced between the two districts.

Finally, the public policy factor in favor of resolving controversies in their locale militates in favor of transfer. The 2005 Agreement was allegedly made in New York between New York corporations. That is where the center of this case originated, and public policy favors resolving it there.

Because New York state law likely governs the common law counts of this action, and since public policy favors resolution of conflicts in the locale in which they originated, the public policy factors weigh in favor of La Rosa's motion to transfer this action.

Since venue is proper in both districts, and since transfer promotes the convenience of the parties and witnesses and is in the interests of justice, La Rosa's alternative motion to transfer this action to the Southern District of New York is granted.

### III. CONCLUSION

For the reasons set forth below, La Rosa's motion to dismiss is denied, SFM's motion to stay arbitration is granted, and La Rosa's cross-motion to stay this action and/or to compel arbitration is denied. SFM's motion to strike the declaration of John T.

A. Rosenthal is denied as moot.  Finally, La Rosa's motion to transfer the action to the Southern District of New York is granted.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: December 7, 2007